ELIZABETH N. ROLL

*v.*

MELFORD N. ROLL et al.

[Decided December 1st, 1904.]

In the absence of a contrary intention appearing, a legacy directed to be paid in lieu of dower and given for the support of the widow—*Held*, as between the widow and the other devisees, to be payable out of the entire estate and to be charged upon the lands.

Heard on bill, answer, replication and proofs.

The bill was filed by the widow of Albert Roll, deceased, against his executors and also against the devisees and legatees under his will, other than the complainant, for the payment of a legacy bequeathed to complainant and to compel the sale of the real estate for the payment of the same. The facts material to the decision of the question are as follows:

Albert Roll, the testator, by the first clause of his will, dated January 13th, 1894, directed as follows: "It is my will, and I do so order, that my just debts and funeral expenses be duly paid and satisfied as soon as conveniently may be after my decease." The second clause provides directly for his widow in these terms:

"I give and bequeath unto my beloved wife, Elizabeth Roll, in lieu of dower, if she should so elect, the house that I use as a residence at the time of my decease, and the sum of fifty dollars per month, to be paid on the first day of each month (or at such times as my wife, Elizabeth Roll, may agree to with my executors) during her natural life."

By the third clause the testator's household furniture, &c., goods of every description, were bequeathed to his wife, and the remaining clauses were as follows:

"4. It is my will, and I do so order and invest my executrix and executors, or the survivors of them, with full power and lawful authority to sell any personal property or real estate, excepting that given to my wife, that they may think best, and the moneys remaining in their hands shall be invested by them to the best advantage for my estate.

"5. It is my will, and I do so order, that whenever the income from my estate shall exceed one hundred and fifty dollars per month, all over the fifty dollars per month given to my wife and other expenses to my estate may be equally divided between my three children, Milford N. Roll, Cecelia A. Bergen and Edith S. Bergen, or their heirs.

"6. It is my will, and I so order, that at the death of my said wife all my personal and real estate be equally divided between my three children, Milford N. Roll, Cecelia A. Bergen, wife of A. H. Bergen, and Edith S. Bergen, wife of C. J. Bergen, share and share alike."

Testator's wife, his son and his two sons-in-law were appointed executrix and executors. The testator died on March 28th, 1898, leaving personal estate valued at about $900, the homestead property and considerable other real estate; the improved property other than the homestead consisting of a dwelling-house and printing office, now occupied by his son, one of the executors, and three small houses and lots at Mechanicsville. The balance of testator's real estate was unimproved property, part of which is land at Melrose, in or near the city of South Amboy, laid out in building lots. In some of this land testator had only an undivided one-half interest. At the time of the testator's death the gross rental value of the houses, other than the homestead, was about $300 per year, as appears from the executors' accounts. The debts of the testator, outstanding at the time of his death, and his funeral expenses, amounted to more than the personal estate. Since the testator's death the executors have sold the small houses and have also sold some unimproved lots. The complainant alleges that the unimproved real estate unsold has increased largely in value since testator's death, and that the executors neglect and refuse to sell the real estate or enough of it to enable complainant to receive from the proceeds invested the $50 per month. The executors deny any increase in value and estimate the entire value of the real estate unsold, exclusive of the home-

stead, at about $6,000, and deny that they have been negligent in selling. No proofs upon this question of values or breach of duty in failing to sell has been offered, it being agreed by the parties at the hearing that the question first to be determined was the right of the complainant to require payment from the *corpus* of the estate, which right the executors deny. Up to the time of rendering their accounts in the Middlesex orphans court (May 6th, 1902) the executors had received from the proceeds of sale of lands sold since the testator's death about $2,800, and from rents and interest about $1,250. From the entire estate which has come to their hands they have paid $2,728.72 for debts due at the testator's death and charges against the estate claimed to be payable out of principal in their hands, the sum of $931.38 for charges against the estate since testator's death for interest, taxes, insurance, repairs, which they claim to be chargeable against the gross income. The balance remaining in their hands from all sources was about $1,250, from which the expenses of administration are to be deducted. Complainant has elected to take under the will and occupies the homestead, but nothing has been paid to her by the executors on account of the money legacy. The executors claim that the entire balance now in their hands represents the principal of the real estate under the will, and that none of it is applicable to the payment of the legacy. Complainant, on the other hand, claims that the legacy is chargeable upon the *corpus* of the estate and on a deficiency in income is payable out of the *corpus,* and that, if necessary, the remaining real estate, other than the homestead, should be sold to pay the legacy.

*Mr. Theodore B. Booraem,* for the complainant.

*Mr. Alan H. Strong,* for the defendants.

EMERY, V. C. (after stating facts and issues).

The general direction of testator, in the first clause of his will, that his debts be paid, charges them upon his real estate (*Shreve v. Shreve, 17 N. J. Eq. (2 C. E. Gr.) 487, 494; Suydam v. Voorhees, 58 N. J. Eq. (13 Dick.) 157, 165 (Vice-Chancellor*

*Reed, 1899*), the personal estate being, however, the primary fund. The devise and bequest to the widow being in lieu of dower, and there being no other provision for her support, she becomes, upon the acceptance of the estate, in accordance with the testator's wishes, a purchaser for value. *Wiggins* v. *Wiggins, 65 N. J. Eq. (20 Dick.) 417 (Vice-Chancellor Pitney, 1903)*, and cases cited at *p. 425; Borden* v. *Jenks, 140 Mass. 562, 564 (1886)*. Her *status* as such purchaser for value is favored by the courts against legatees and devisees who claim as mere volunteers. Thus the legacy, in lieu of dower, is not subject to abatement with other general legacies. *Dey* v. *Dey's Administrator, 19 N. J. Eq. (4 C. E. Gr.) 137, 141 (Chancellor Zabriskie, 1868)* ; *2 Wms. Ex. (R. & T. ed.) 669, 670, note 9*. As to the priority of the legacy in lieu of dower over the devises of real estate, the question is purely a question of the intention of the testator to be gathered from the will itself, reading this, when difficulties or ambiguities arise from the will itself, in connection with the situation of the testator's property and the persons taking. In determining the intention from the will itself, some authorities hold that, in view of the valuable consideration paid by the widow by relinquishing her dower, she is a *quasi* creditor, and, in the absence of any indication of a contrary intention, a legacy, directed to be paid in lieu of dower, is payable out of all testator's estate, as his debts would be, and marshaled as in case of debts payable. *Borden* v. *Jenks, 140 Mass. 567*. At the original hearing of the cause this was my view of the rule of construction to be applied, and if the question is an open one in this state, it is the rule which I would apply in the case. On the application for rehearing it is claimed by defendants' counsel that an early decision in our own courts (*Paxson* v. *Potts, 3 N. J. Eq. (2 Gr.) 313, Chancellor Vroom, 1835*) applied the opposite rule of construction, and held that a legacy, coupled with a devise of land in lieu of dower, was not chargeable on lands devised to beneficiaries in the absence of an intention to charge declared expressly or by necessary implication, and so clearly as not to admit of a reasonable doubt. This is undoubtedly the rule still generally applied as against heirs-at-law, who must be clearly disinherited, and as between

legatees or devisees, who are all merely volunteers; but the question now is whether this is the rule to be applied to the present case, where the legacy to the widow, in lieu of dower, must be taken as also for her support. The payment is to be made monthly, and she does not appear to have any other source of income. In *Paxon* v. *Potts, supra,* the equity to charge the legacy, because given in lieu of dower, seems to have been considered as depending on the relative value of the dower right and the legacy and devise in lieu thereof, and in the absence of any proof on this subject the chancellor considered that the supposed equity would be based on mere conjecture, and he declined to charge the lands. The question of the intention of the testator to provide for the support of his widow, appearing by positive directions for payment made by the will, and the situation of his property showing that the legacy was given for support, was not involved in the case. It seems clear that relative values of the legacy or devise and of the dower cannot in such cases be made the sole test of the existence of the equity to charge lands, for these provisions in lieu of dower are manifestly not made by way of bargaining with the widow for a sale of her rights. The testator, in disposing of his estate and in discharging the moral obligation to provide for the support of the widow, has the right to fix, in her favor, his own price as the equivalent for the release of her dower. *Farnum* v. *Bascom, 122 Mass. 282, 289 (1877)*; *Borden* v. *Jenks, 140. Mass. 566, 567.* Chancellor Vroom, in *Van Winkle* v. *Van Houten, 3 N. J. Eq. (2 Gr.) 172, 190 (1834),* had just previously considered the question whether a legacy, given to a child for support, was charged upon lands, and held that this circumstance distinguished the legacy from a purely voluntary legacy and was entitled to great weight in determining that the legacy was charged. The cases referred to by him charged the lands, in the absence of express words or necessary implication other than that arising from the condition of the estate and the situation of the persons taking. It is difficult, I think, to distinguish upon principle between the effect of a legacy for support to a child and to a widow, and I do not think that the learned chancellor, in deciding this point, in *Paxson* v. *Potts,* intended in any way to question the prin-

ciples laid down by him in the previous decision. In *Snyder* v. *Warbasse, 11 N. J. Eq. (3 Stock.) 463 (1857)*, the legacy was in lieu of dower, and Chancellor Williamson gave that fact consideration in connection with the other facts in the case and held the legacy chargeable. In the later case, *Corwine* v. *Corwine, 24 N. J. Eq. (9 C. E. Gr.) 579 (Court of Errors and Appeals)*, the court of errors and appeals considered *Paxson* v. *Potts*, but not on the point now in issue. Taking the question, therefore, to be still an open one, my view is that, in the absence of a contrary intention appearing, a legacy directed to be paid in lieu of dower and given for the support of the widow, should, as between the widow and the other devisees, be deemed to be payable out of the entire estate and be charged upon the lands. It is admitted by the executors and devisees that the legacy is chargeable on the income of the lands and personal estate, and the main question is whether the legacy is payable out of the *corpus* or only out of the income of real estate. In my view, taking the will itself in connection with the situation of testator's property and the persons taking, it sufficiently appears that the intention of the testator was that the legacy to the wife was to be paid out of the *corpus* of the estate, real as well as personal, and not merely from the income of the real estate. The direction for payment of $50 per month to the widow by the second clause of the will was absolute, and the only matter left open for agreement between the executors and the widow was a change in the time of payment fixed by the testator. This general direction for payment did not limit the source of payment to the personal estate, and the testator must be taken to have known that his personal estate would be exhausted by the payment of debts. That the payment thus generally directed was intended to be made from other sources than the personal estate appears from the subsequent clauses of the will. Having directed the payment of debts, funeral expenses and this legacy to the wife, the testator, in the fourth clause, orders and authorizes the executors to sell both personal and real estate, and directs that the *moneys remaining* in their hands shall be invested. The "moneys remaining" means, I take it, remaining from the proceeds of sale after deducting something. This

deduction can be only of payments previously directed, which were three in number, viz., the debts, funeral expenses and the payments to the wife. Counsel for the executors contend that the clause means, remaining after only debts and funeral expenses paid, but this limitation to two of three payments previously directed does not seem to be justified. So far as relates to the proceeds of sale of real estate, the legacy is, by this clause, made payable out of the *corpus,* and if this be true, then this mingling of the proceeds of sale of real and personal estate directed and authorized to be sold, and the disposition of the proceeds as a common fund are strong indications that the legacies as well as the debts are chargeable on the *corpus* of the entire estate. The power to sell the lands to create this common fund is also evidence of an intention to charge the *corpus* of the estate with the payment of debts and legacies which the executors are directed to pay. The fourth clause, read with the second clause, would seem, therefore, to make the legacy chargeable on and payable out of the *corpus.* The fifth clause is relied on as limiting the effect of the previous clauses so as to confine the charge to the income only. This clause provides that whenever the income exceeds $150 a month, all over $50 to the wife and other expenses are to be divided among testator's children. It is insisted that, by this fifth clause, the testator indicates that only the income of the real estate is chargeable with the annuity, but this clause, I think, was not intended to limit the effect of the previous general directions for payment and the previous charges upon the proceeds of sale of the entire estate, but was intended solely to provide for the possible contingency of an income more than sufficient to pay the legacy and other current expenses of the estate. This is the plain effect of the direct language of this clause, and it is only indirectly and by inference that any gift at all to the widow out of the income is made by this clause. The clause proceeds on the assumption that the widow, by the previous direction of the will in the second clause, is entitled to receive payment from the income (either gross or net) and was not inserted for the purpose of securing the income to her as an additional source of payment which the testator supposed she did not have under the second clause. In view of

his debts and the rental value of his property at the time of his death, the testator could not have been taken to intend that the monthly payments should, at all events, be made from net income only. The last clause of the will gives all the real and personal estate together to testator's three children—one son, who is the executor, and two daughters, the wives of two other executors. A residuary clause, devising real and personal property together, is now considered as indicating an intention to charge general legacies upon the real estate. *Corwine* v. *Corwine, 24 N. J. Eq. (9 C. E. Gr.) 579 (Court of Errors and Appeals, 1874)*, qualifying on this point the views expressed in *Paxson* v. *Potts.* This clause is not in terms a residuary clause, but it is a blending of the real and personal estate into a common fund for the purpose of division by the executors between the devisees after the death of the widow and after the payments previously directed have been made. The devise of the property is made to three devisees, one of whom is one of the executors, who are directed to make the payment, and the other two devisees are the wives of the executors directed to make the payment. Where the executors and devisees are the same persons, land devised immediately to them is considered to be charged with the legacies directed to be paid, and this whether there was a deficiency of personal estate or not. The reason is that in such case the meaning of the devise is that the devisee holds on condition that he do pay. *Wyckoff* v. *Wyckoff, 48 N. J. Eq. (3 Dick.) 113, 119 (Vice-Chancellor Pitney, 1891)*, affirmed on appeal for reasons stated *(49 N. J. Eq. (4 Dick.) 344)*. And in *Van Winkle* v. *Van Houten, supra,* Chancellor Vroom considered that where the wives of the executors, who were directed to pay the legacy, were the devisees, the circumstance was entitled to weight on the question whether the land was charged with the legacies.

The conclusion I reach is that the monthly payment to the wife in lieu of dower was to be paid in any event, and that it was chargeable upon the *corpus* of the estate. It was payable out of the proceeds of the real and personal estate sold after payment of the debts and funeral expenses, and so far as these proceeds have been taken for other purposes the executors must account to complainant. The annuity will be declared to be chargeable on

the *corpus* of the estate, but as the executors under the will are invested with a discretion as to the time of sale, no sale should be directed unless it appear that the executors are, as alleged in the bill, improperly delaying the sales of real estate, or, that a sale is necessary for the payment of the annuity. The cause will stand over for further hearing upon the questions of the amount in the executors' hands applicable to the annuity and of directions for sale.