THOMAS J. MARSHAL *v.* DALTON PAPER MILLS.

May Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, and HASELTON, JJ.

Opinion filed October 20, 1909.

*Master and Servant—Injuries to Servant—Safe Working Place —Negligence—Question for Jury—Fellow Servant—Assumption of Risk—Damages—Evidence—Trial—Misconduct of Counsel—Reversal Specially to Assess Damages.*

In an action by a servant for injuries caused by slipping on the running board of a paper machine that he was attending, evidence *held* to justify the finding that the slip was caused by an accumulation of grease on the board.

Since there was evidence that the slip was caused by an accumulation of grease on the running board, plaintiff was properly allowed to show that it would take at least three or four days for the grease to accumulate to the extent described, though sometimes it would form faster than at others.

The master's duty to furnish his servant a reasonably safe place wherein to work is a continuing one, requiring the master not only to furnish, but to maintain such a place, and for a servant's injury due to a neglect of that duty the master is liable, though the unsafe condition is caused by the negligence of a fellow servant.

In an action by a servant against a master for injuries from slipping on a running board, caused by an accumulation of grease thereon, where the master knew with what frequency grease might drop on the board and the dangers attending its required use by the servant if it was not kept clean, and the evidence tended to show such an accumulation of grease on the board at the spot where the servant slipped as could not have formed in less than three or four days, the question whether the master should have known of the unsafe condition in season to avoid the accident was for the jury.

A master will be charged with notice of a defect in the instrumentalities furnished, where the defect has existed so long that a prudent man would have discovered it in time to have avoided the accident.

Where the proximate cause of a servant's injury is the joint and concurrent negligence of the master and a fellow servant the master is liable.

A running board that a servant is required to stand on in operating a paper machine is a "working place" within the rule requiring the master to provide his servant a reasonably safe working place. *Lambert* v. *Missisquoi Pulp Co.*, 72 Vt. 278, and *Garrow* v. *Miller*, 72 Vt. 284, distinguished.

A servant has a right to assume that his master has used diligence to provide him a safe working place, and he does not assume the risk of the master's negligence in the performance of that duty, in the absence of actual or imputed knowledge thereof.

Whether a servant, injured by slipping on a running board that he was required to walk on while operating a paper machine, assumed the risk *held* for the jury.

In an action by a servant for injuries, evidence that, because of his experience in successive lower positions in the line of work, plaintiff was capable of doing the work of the position next higher than the one he occupied when injured was inadmissible on the issue of damages.

In an action by a servant for injuries from slipping on a running board caused by an accumulation of grease thereon, where the evidence showed the particular workman whose duty it was to keep the board clean, and his daily wages, and three lawyers appeared for the defence, the argument of plaintiff's counsel that the indications in the case were that defendant was paying more for lawyers to defend the case than it did to have the board inspected and kept clean was not improper.

In an action for personal injuries, where the sole error found was in the admission of evidence bearing only on the question of damages, the cause will be reversed for the assessment of damages only.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1908, Essex County, *Powers*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The plaintiff seeks to recover for injuries received by reason of the alleged negligence of the defendant while in its employ in its paper mill, at about two o'clock in the morning of February 15, 1906. At the time of the accident the plaintiff was working as back tender on the paper machine, a position he had filled for some over a year. In time of work he alternated weekly between day and night, but at the time of the accident he was on the night shift. The facts which the evidence tended to show are stated in narrative form: The paper machine was a hundred or more feet in length and in part consisted of press rolls, driers, calender rolls, reels, and a winder. The driers consisted of two series of metallic cylinders heated by steam, four feet in diameter and 146 inches in length, supported by an iron frame. One series of cylinders is above the other and the cylinders in the upper series alternate with those in the lower series. There are two small rolls called felt rolls above and between the cylinders in the lower series, and one such roll between the cylinders in the upper series. An endless felt passes over the series of cylinders

guided by the felt rolls. Its use is to guide the paper through the machine and press it against the hot cylinders. Beside the machine, in front of the driers and attached to the frame, there is an iron running board sixteen inches in width and about fifteen inches above the floor, the upper surface of which is corrugated. The journals of the driers rest in boxes in the frame of the machine and project out over the running board from four to five inches. The boxes of the journals were packed with hard grease and waste about once in four weeks, the work usually being done on Sunday. The felt rolls were oiled every day and sometimes oftener. Both driers and felt rolls revolved rapidly. More or less grease dripped from the journals of the driers on to the running board. This was a daily occurrence but it dripped sometimes faster than at other times, especially if the journals became unusually hot. This condition had existed during all the time the plaintiff had worked in the defendant's mill, and was known to him. The end of the machine where the press rolls are located is called the wet end, and the other end, where the calender stack and reels stand, is called the dry end. Wood fibre from the liquid pulp is gathered on felt, passes through the press rolls by which moisture is taken out and thin sheets formed. From the press rolls the sheets are guided through the long series of driers, where the moisture is dried out of the paper into the calender stack or rolls which put on the final gloss. It then runs on the reels from which it goes on the winder where it is trimmed and shaped ready for the finishing room.

The several employees who operate a machine in order of rank, beginning with the lowest are the broke hustler, screen boy, fifth hand, fourth hand, third hand, spare back tender, back tender and machine tender. The plaintiff had worked in defendant's mill as fifth hand about a year, as fourth hand eleven months, as third hand ten months, as spare back tender two months, and as back tender about one year prior to his injury. He had also worked some in other mills and was an experienced man, but there was no evidence that he had ever been a machine tender.

Among the duties of the plaintiff as back tender was that of keeping the paper running through the machine. Once in a while the paper would break, sometimes often, and at other

times it would run all day without a break. When a break occurred it was the duty of the back tender to adjust and start it again. If the break happened at the wet end the back tender had to guide the paper through the driers. To do this he walked along the running board, guiding the paper on to the top series of driers with his left hand and on to the lower series with his right, doing which he had to reach into the machine over the lower driers to a greater or less distance. The plaintiff knew and appreciated that in the performance of his work there was great danger of being caught between the felt and the driers and if so caught he was liable to be injured and would perhaps lose his life. He also knew and appreciated that there were apt to be dangers in walking along the running board.

Some of the time while plaintiff was back tender one Ayers worked as spare back tender, in which time the plaintiff and the machine tender cleaned grease off the running board "lots of times." But at the time of the accident and for some time before, a man by the name of Ray Hayes was spare back tender, and upon him rested the duty of keeping the running board clean. Hayes worked days only. He had not at all times performed his duty in this respect, but whenever the plaintiff had noticed grease collected thereon, he complained to the superintendent and it was promptly attended to; but there had been no trouble of this kind for some time prior to the accident. Plaintiff knew and appreciated the fact that if grease accumulated on the running board he was liable to slip when guiding the paper over the driers and receive an injury by falling into them. The running board was not dangerous in and of itself. It was only by the presence of oil and grease on it that it became so; and the allowing of grease and oil there was the only negligence alleged in the declaration, or that the evidence tended to prove. Just before the accident there was a break in the paper at the wet end of the machine. Hearing the signal given by the machine tender, the plaintiff, being at the dry end, ran to the wet end, took up the paper, and started with it over the driers. When he had proceeded about two-thirds the length of the machine the paper started to follow the felt around a felt roll. The plaintiff reached for it with his right hand, his foot slipped on the running board, and he fell on to the drier. His arm was caught between the felt and the cylinder. He immediately became un-

conscious. In some way he was thrown by the cylinder out onto the floor. His injury resulted in a complete paralysis of his right arm.

Exceptions were taken to the following statements made by plaintiff's attorney in the closing argument to the jury: ''The indications in this case are that he has spent more time and money a good deal about getting lawyers to tell nice stories about this case than they did in having fellows look after that run-board to keep the grease off from it.'' Also, ''they have tried to keep him along until this case was disposed of. They gave him a job of tender or third hand, I think it is.''

*W. B. C. Stickney, Drew, Jordon, Shurtlett & Morris* and *Harry Blodgett* for the defendant.

Defendant was not negligent. It furnished a proper running board, and the case is governed by the principle that, where a master has furnished safe and adequate appliances, he is not liable for injuries attending their use by intelligent and properly instructed servants. *Corbin* v. *Railroad*, 78 Vt. 458; *Buch* v. *Company*, 69 N. H. 257; *Williamson* v. *Sheldon Marble Co.*, 66 Vt. 427; *Houston* v. *Brush & Curtis*, 66 Vt. 331; *American Bridge Co.* v. *Seeds*, 144 Fed. 605; *Railroad* v. *Neeham*, 63 Fed. 107; *Brady* v. *R. R.*, 114 Fed. 100; *Howard* v. *Railroad*, 26 Fed. 837; *Armour* v. *Hahn*, 111 U. S. 313; *Tilley* v. *Company*, 74 N. H. 316; *Wallace* v. *Railroad*, 72 N. H. 504; *Cregan* v. *Marston*, 126 N. Y. 568; *McGee* v. *Boston Cordage Co.*, 139 Mass. 209; *Pennsylvania Co.* v. *Feshack*, 123 Fed. 465; *Olson* v. *Oregon etc. Co.*, 104 Fed. 574; *Johnson* v. *Boston Tow Boat Co.*, 135 Mass. 209; *McCampbell* v. *Steamship Co.*, 144 N. Y. 552; *Dwyer* v. *Hickler*, 16 N. Y. Supp. 814; *Moore* v. *McNeill*, 54 N. Y. Supp. 956; *Shaw* v. *Railway*, 73 N. H. 65, 67. The injury was due to the negligence of a fellow servant in respect of a safe and adequate appliance in the first instance furnished by the master. *Lambert* v. *Missisquoi Pulp Co.*, 72 Vt. 278; *Garrow* v. *Miller*, 72 Vt. 284; *Brown* v. *People's Gaslight Co.*, 7 Atl. 204; *Webber* v. *Piper*, 109 N. Y. 496; *De Young* v. *Federal Match Co.*, 69 Atl. 500; *Connelly* v. *No. Jersey St. Ry. Co.*, 69 Atl. 487; *McTiernan* v. *Am. Woolen Co.*, 197 Mass. 238; *Perry* v. *Rogers*, 157 N. Y. 251; *Hoffnagle* v. *Railway Co.*, 55 N. J. 608; *Ford* v. *R. R.*

Co., 22 N. E. 946; Durst v. Carnegie Steel Co., 33 Atl. 1102; Griffin Railway Co., 124 Ind. 328; Gobeil v. Ponemah Mills, 69 Atl. 684; Sofield v. Guggenheimer Smelting Co., 64 N. J. L. 606; Hilton v. Railroad, 73 N. H. 116; Galvin v. Pierce, 72 N. H. 79.

The plaintiff assumed the risk. The case shows that he knew and appreciated the precise danger that caused his injury. Wormell v. Railroad, 79 Me. 397; Beach Contrib. Neg. Par. 138; Russell v. Tillotson, 140 Mass. 210; McLaughlin v. Atlantic Mills, 61 Atl. 42; Tham. v. Steel Ship Co., 39 Wash. 271; Crown Cotton Mills v. McNally, 123 Ga. 35; Curley v. Hoff, 62 N. J. L. 758; Omaha Packing Co. v. Sanduski, 155 Fed. 897; Langlois v. Railroad Co., 84 Me. 161; Whalen v. Whitcomb, 178 Mass. 33; Bender v. New York Glucose Co., 61 Atl. 388; Murphy v. Am. Rubber Co., 159 Mass. 266; Hattaway v. Atlanta Steel Co., 155 Ind. 507; Mundle v. Hill Mfg. Co., 86 Me. 400; Bessey v. Newichauanick Co., 94 Me. 71; Tinkham v. Sawyer, 153 Mass. 485; Gleason v. Railroad Co., 159 Mass. 68; Wilson v. Tremont & Suffolk Mills, 159 Mass. 154; Kleinest v. Kunkardt, 160 Mass. 230; Devlin v. Phoenix Iron Co., 182 Pa. St. 109, 37 Atl. 927; Disano v. N. E. Steam Brick Co., 40 Atl. 7; Clark v. Barnes, 37 Hun. 389; Kochler v. Syracuse Specialty Mfg. Co., 42 N. Y. 982; Willson v. Chess & Wyman, 78 S. W. 450; Ragon v. Railroad, 97 Mich. 265; Balle v. Detroit Leather Co., 73 Mich. 158.

It was manifest error to allow plaintiff to testify that he was capable of running the machine, and so to allow the jury to speculate as to his capacity to earn wages. Richmond etc. Co. v. Elliott, 149 U. S. 266; Richmond etc. R. R. Co. v. Allison, 86 Ga. 145; Chase v. Burlington C. R. & N. Ry. Co., 76 Iowa 675; Brown v. The Chicago etc. Co., 64 Iowa 652; Southern etc. Co. v. Davis, 32 Ind. App. 569; Colorado Coal & Iron Co. v. Lamb, 6 Colo. App. 255, 267; Brown v. Cummings, 7 Allen 507.

Dunnett & Slack for the plaintiff.

It was proper to allow plaintiff, as bearing on the question of damages, to testify that he was capable of running the machine, and so of earning better wages than he was receiving when injured. "Where a recovery for diminution of earning capacity is claimed, it seems that evidence is not only competent of the value of the plantiff's earning power in the employment

in which he was engaged when injured, *but also in any other em-
ployment or occupation for which he was fitted."* And further,
at par. 511, p. 631: "It has also been held that the jury might
consider the ability which the plaintiff would have possessed,
but for the injury complained of, to acquire a capacity for a
more profitable employment in the future." Watson, Damg.
508; 6 Thomp. Neg. §7294; *Grimmelman* v. *Union Pac. Ry. Co.,*
8 Am. & Eng. R. R. Cas. 321; *Chicago etc. Co.* v. *Long,* 65 S. W.
882; *Rayburn* v. *Central Iowa R. R. Co.,* 74 Iowa 637; *Hilton*
v. *Ala. Midland R. R. Co.,* 97 Ala. 275; *Cook* v. *Chehalis River
Lumber Co.,* 94 Pac. 189; *McCoy* v. *Milwaukee, St. R. Co.,* 88
Wis. 56; *Hooker* v. *M. & W. R. R. Co.,* 62 Vt. 47.

Plaintiff did not assume the risk of the greased running
board. He only assumed the usual and ordinary risks incident
to the business in which he was engaged, which meant those risks
incident to the business when conducted in the ordinary and
usual manner. The condition that caused the injury was an
*extraordinary* one, arising solely from the failure to remove the
accumulated grease from the running board for three or four
days. It is said in *Dumas* v. *Stone,* 65 Vt. 442, that "When a
servant shows that his injury was caused by a danger not usually
and ordinarily incident to the business, and which ought not to
have existed, and would not have existed, had the master per-
formed his duty to him, and of which he neither knew nor was
negligent in not knowing the master is liable." *Severance* v.
*New England Talc Co.,* 72 Vt. 181; *George* v. *Clark,* 85 Fed.
608; *Chicago etc. R. R. Co.* v. *Gillison,* 173 Ill. 264; *Bookrum* v.
*Galveston etc. R. R. Co.,* 57 S. W. 919; Buswell on Personal
Injuries, 419; *Northern Pac. R. R. Co.* v. *Herbert,* 116 U. S.
624; *Drown* v. *N. E. Tel. & Tel. Co.,* 81 Vt. 358.

The fellow-servant doctrine has no application in this case.
As was said in *Leazotte* v. *Jackson Mfg. Co.,* 69 Atl. 640:—
"While the master who has provided a safe place is not liable
upon the ground of that obligation merely because the work place
has become unsafe through the negligence of the servants doing
the work in the place * * * lack of care to guard against the dan-
ger which rendered the work place unsafe, of which the master
knows, or ought to have known in season to prevent the injury,
is a breach of that obligation, without reference to the manner in
which the danger was created." *Petrus* v. *Berlin Mills Co.,* 71

Atl. 213.; *Coates* v. *Boston & Maine R. R. Co.*, 153 Mass. 297; *Johnson* v. *Bank*, 79 Wis. 418, 24 Am. St. Rep. 722; *Fluhrer* v. *Lake Shore etc. Co.*, 121 Mich. 213; *Reed* v. *Boston & Albany R. R. Co.*, 164 Mass. 129. "Another rule of the law of negligence which not only entitled the plaintiff to recover, but also renders the fellow-servant doctrine ineffectual as a defence, is that when the negligence of the defendant contributes, that is to say, has a share in causing the injury, the defendant is liable even though the negligence of a fellow-servant of the plaintiff is contributory." *Morrisey* v. *Hughes*, 65 Vt. 553; *Railway Co.* v. *Cummings*, 106 U. S. 700; *Chicago etc. Co.* v. *Sutton*, 63 Fed. 394; *Hansell-Elcock Foundry Co.* v. *Clark*, 214 Ill. 299; *Stringham* v. *Stewart*, 100 N. Y. 515; *Ellis* v. *N. Y. etc. Co.*, 95 N. Y. 546; *Johnson* v. *Bank*, 79 Wis. 414, 24 Am. Rep. 722; *Howd* v. *Miss. etc. Co.*, 50 Miss. 178; *Mahoney's Admr.* v. *Rutland R. R. Co.*, 78 Vt. 244. Moreover, the master's duty to furnish his servant a reasonably safe working place is a contractual one, which he cannot so delegate as to free himself from liability for negligence in its performance. *Davis* v. *R. R. Co.*, 55 Vt. 84; *Hough* v. *Railway Co.*, 100 U. S. 213; *Houston* v. *Brush & Curtis*, 66 Vt. 331; *Kiley* v. *Rutland R. R. Co.*, 80 Vt. 536; *Sweat* v. *B. & A. R. R.*, 156 Mass. 284; *Mahoney* v. *Dore*, 155 Mass. 513; *Lillie* v. *American Car & Foundry Co.*, 58 Atl. 272; *Evansville etc. Co.* v. *Holcomb*, 36 N. E. 39; *Chicago etc.* v. *Eaton*, 62 N. E. 784; *Drymala* v. *Thompson*, 26 Minn. 40; *Nord Deutscher* v. *Ingebregslen*, 51 Am. St. Rep. 604.

WATSON, J. At the close of the evidence defendant moved for a verdict on the grounds, (1) that there was no evidence from which the jury could find the defendant guilty of negligence; (2) that the injury was caused by the negligence of a fellow servant; and (3) that the plaintiff assumed the risk.

It is argued that the plaintiff failed to show that his injury resulted from the accumulation of grease on the running board. The only testimony relating to the condition of the running board at the time of the accident was that of the broke hustler, Clarence W. Raymond, who testified that he was standing on the floor about twelve feet from the plaintiff; that he was watching the plaintiff as he came along the running board guiding the paper in turn over one and under another roll; that in some

32

way the paper did not go just right and the plaintiff reached in to catch it, slipped, and went in; that the witness helped to carry the plaintiff into the finishing room, from which place he was taken home; that immediately thereafter the witness went to look at the place "right where he slipped," noticed it, and that a quantity of grease was there, six or seven inches long, and about the width of the running board; that it was a good deal thicker in the middle than on the edges; and quite a little above the ridges of the running board. Upon this evidence uncontradicted the jury might well find that there was on the running board at the time and place in question an accumulation of grease in quantity as described by the witness, and that the slipping of the plaintiff was caused thereby. The plaintiff testified that the grease which dropped on the running board became very hard, which fact in itself, in the minds of the jury, might sufficiently account for the lack of evidence showing indications of a track made by him at the time of accident.

After the witness Raymond had testified as above stated, the plaintiff was called, and subject to objection was permitted to testify that it would take three or four days for grease to accumulate on the running board in the condition described by that witness; that sometimes it would form faster than others, yet it would never accumulate as described in a less time. No objection was made to the competency of the plaintiff to give such testimony, and the only ground urged why the evidence should have been excluded is that since the plaintiff's injury was not shown to have resulted from the grease the length of time in which it would so form was immaterial. But as under our holding above this ground of objection fails, the exception is without merit.

It is said that inasmuch as the running board contained no structural defects and it became dangerous only by the accumulation of grease thereon, the defect shown by the evidence was due to the negligence of a fellow servant, the spare back tender, whose duty it was to keep the machine clean; that the performance of this duty pertained to the operation of the machine, and that such work of operation is not the work of the master, but of a servant, and consequently can be delegated to a competent person without responsibility for his negligence. Assuming that cleaning the machine relates to the operation,

and therefore is the work of a servant for the mere negligence of whom, if he be a competent person, the master is not liable (see *Quigley* v. *Levering,* 167 N. Y. 58, 60 N. E. 276, 54 L. R. A. 62; *Cregan* v. *Marston,* 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854; *Stewart* v. *International Paper Co.,* 96 Me. 30, 51 Atl. 237; *DeYoung* v. *Federal Match Co.* (N. J.) 69 Atl. 500; *American Bridge Co.* v. *Seeds,* 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041; *Wallace* v. *Railroad,* 72 N. H. 504, 57 Atl. 913; *Burke* v. *National India-Rubber Co.,* 21 R. I. 446, 44 Atl. 307), yet the duty of the master to provide a reasonably safe working place is a continuing one, and notwithstanding the place furnished was in the first instance a proper performance of this duty, if it afterwards became temporarily unsafe and the master knew, or in the exercise of due care ought to have known, of such unsafe condition, the obligation of the master required him to remedy it; and the fact that the unsafe condition was caused by the negligence of a fellow servant does not exempt the master from this duty. *Santa Fé P. R. R. Co.* v. *Holmes,* 202 U. S. 438, 50 L. ed. 1094, 26 Sup. Ct. 676; *Kreigh* v. *Westinghouse, Church, Kerr & Co.,* 214 U. S. 249, 53 L. ed., 984, 29 Sup. Ct. 619; *Loranger* v. *The Lake Shore & M. S. Ry. Co.,* 104 Mich. 80, 62 N. W. 137.

It is further argued that the duty of the master in this respect as applied to machinery and appliances relates only to structural fitness as distinguished from temporary conditions incident to operation; and that the law does not require the master to stand by and watch the working place all the time. The answer to this position may be given in the language of Mr. Justice Day speaking for the court in the Kreigh case cited above: ''But while this duty (providing a safe place) is imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless, the master is not held responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen in the manner of carrying on the work, where he, the master, has discharged his primary duty of providing a reasonably safe appliance and place for his employees to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant and his fellow workmen. * * * Nevertheless, the duty of providing a reasonably

safe place for the carrying on of the work is a continuing one, and is discharged only when the master furnishes and maintains a place of that character. * * * The duty is a continuing one and must be exercised whenever circumstances demand it.". In the case before us the master knew with what frequency grease might drop on the running board, and the risks and dangers attending the use of the latter as a working place for its servants, if not kept clean. The evidence tended to show such an amount of grease thereon at the time and place of the accident as could not have accumulated in less than three or four days' time. While the case was without evidence showing actual knowledge thereof by the master, the facts and circumstances disclosed were sufficient to go to the jury on the question, whether in the exercise of due care the master would not have known of the unsafe condition in season to avoid the accident. The master will be charged with notice of a defect in the instrumentalities, which has existed for such a length of time that in the exercise of the care and diligence required on its part the defect must have been discovered in time to avoid the injury, and on the evidence it was a question for the jury to determine. *Houston* v. *Brush,* 66 Vt. 331, 29 Atl. 380; *Vaillancourt* v. *Grand Trunk Ry. Co.,* decided this term. The verdict for the plaintiff shows that the jury must have found such negligence by the defendant as charged it with notice of the unsafe condition of the running board. In these circumstances the law required the defendant to exercise proper care to make it reasonably safe as a working place, and its failure so to do was a proximate cause of the accident. *Noyes* v. *Smith,* 28 Vt. 59, 65 Am. Dec. 222; *Klineintie* v. *Nashua Mfg. Co.,* 74 N. H. 276, 67 Atl. 573; *Leazette* v. *Jackson Mfg. Co.,* 74 N. H. 840, 69 Atl. 640; *Burke* v. *National India-Rubber Co.,* 21 R. I. 446, 44 Atl. 307; *Venbuor* v. *Lafayette Worsted Mills,* 27 R. I. 89, 60 Atl. 770; *Gilman* v. *Eastern R. R. Co.,* 13 Allen, 442, 90 Am. Dec. 210; *Reed* v. *Boston & Albany R. R. Co.,* 164 Mass. 129, 41 N. E. 64; *Johnson* v. *Bank,* 79 Wis. 414, 24 Am. St. Rep. 722, 48 N. W. 712. The fact that the negligence of a fellow servant of the plaintiff was a contributing proximate cause is immaterial and affords no ground of defence. *Morrisey* v. *Hughes,* 65 Vt. 553, 27 Atl. 205. This in effect also disposes of the questions based upon the fellow servant doctrine raised by exceptions to the charge.

Our attention is called to *Lambert* v. *Missisquoi Pulp Co.*, 72 Vt. 278, 47 Atl. 1085, and to *Garrow* v. *Miller*, 72 Vt. 284, 47 Atl. 1087, known as the "staging cases," as authorities strongly indicating the distinction for which the defendant here contends between work of construction and repair and work of operation; and further as establishing the principle that a servant assumes the risk of injury from the negligence of a fellow servant. Yet in those cases it is said that there is a plain distinction between places prepared by the master through the agency of one class of servants for the occupancy of another class in some employment to be therein carried on, and places prepared for temporary use in the erection of a building by those employed for that work; and that the latter are not places in which to work in the ordinary sense of the term, but instrumentalities provided by the workmen themselves as means of carrying on the work they are employed to do. That in such cases the master is responsible for the sufficiency of the materials, but not for the manner in which the servants use them. The case before us is of the other class. The running board is a permanent platform furnished by the defendant as a working place for its servants, and the rule requiring the master to provide a reasonably safe place applies. *McCarthy* v. *Claflin*, 99 Me. 290, 59 Atl. 296; *Channon* v. *Sanford Co.*, 70 Conn. 573, 40 Atl. 462, 41 L. R. A. 200, 66 Am. St. Rep. 133; *Sims* v. *American Steel Barge Co.*, 56 Minn. 68, 57 N. W. 322, 45 Am. St. Rep. 451; also cases cited in note, 75 Am. St. Rep. 631.

It is further argued that in view of the plaintiff's knowledge touching the frequent dropping of grease on to the running board, and by reason thereof the necessity ordinarily for cleaning it off daily, his appreciation of the danger attending the performance of his work, if it was not kept clean, his knowledge that Hayes had no regular time for cleaning it and that he had not at all times performed his duty in this respect with sufficient frequency, it should be held that the risk attending the accumulation of grease in question was assumed by the plaintiff. It is said that he knew or ought to have known that Hayes was as likely to neglect his duty one time as another; that the running board was in plain view of the plaintiff, and that whenever he passed to the wet end of the machine it was within the range of his vision all the time, and that breaks in the paper some-

times occurred often. There was no evidence, however, that grease had ever before accumulated on the running board to such an amount, nor that the plaintiff had reason to believe it would, nor that he knew it was there on the night of the accident before he was injured. On the other hand his testimony that he did not know of any trouble with the running board that night was uncontradicted. When before that time there had been a break in the paper during the time the plaintiff was on duty, or when he had previously been called upon to pass over the running board to or from the wet end of the machine, does not appear. He was then working nights only. On that particular night the light in the mill was not good. On the occasion in question in going to the wet end of the machine he ran on the floor between the machine and the side of the room. In returning, guiding the paper over and under the driers and felt rolls, necessarily his whole attention was constantly given thereto. He could not look down to see where nor on what he was stepping, without great danger of being caught by and drawn into the machine. The jury has found in effect that but for the defendant's negligence the unsafe condition would not have existed. The risk was therefore not an ordinary one incident to the plaintiff's employment, but an extraordinary and unusual one which he was not in law obliged to anticipate. He had a right to assume that the master had used due diligence to provide him a suitable place in which to work, and he did not assume the risk of the master's negligence in the performance of that duty. Upon the facts and circumstances shown we connot say as a matter of law that the plaintiff knew of the unsafe condition, nor that it was so plainly observable that he will be taken to have known of it. The question of assumption of the risk was therefore for the jury. *Dumas* v. *Stone*, 65 Vt. 442, 25 Atl. 1097; *Dunbar* v. *Central Vt. Ry. Co.*, 79 Vt. 474, 65 Atl. 528; *Morrisette* v. *Canadian Pacific R. R. Co.*, 74 Vt. 232, 52 Atl. 520; *Place* v. *Grand Trunk Ry. Co.*, 80 Vt. 196, 67 Atl. 545; *Drown* v. *New England Tel. & Tel. Co.*, 80 Vt. 1, 66 Atl. 801; *Vaillancourt* v. *Grand Trunk Ry. Co.*, cited above.

This disposes of all the questions presented upon the motion for a verdict, and in overruling the same there was no error.

As back tender the plaintiff received two dollars and fifty cents per day for his work, the usual compensation paid for such

services.  For the purpose of enhancing the damages he was permitted to testify against objection that at the time of his injury, with his experience, he was capable of running the machine, a position then and since worth three dollars and fifty cents a day.  The case does not show that any vacancy existed in the higher position, nor that one was likely to exist within any reasonable time in the future, nor that there was any rule under which the defendant promoted its employees according to rank, even though competent to fill the higher position.  Whether in any event evidence of prospective promotion with increase of pay attending it is admissible we do not decide.  Certainly testimony by the injured servant that by his experience in holding positions of lower grades in a particular line of work, he is capable of doing the work of a higher position than he ever held, carrying more pay than he was receiving at the time of his injury, standing alone, is too problematical and uncertain to have any probative force on the question of damages in cases of this character, and its admission was error.  *Richmond & Danville R. R.* v. *Elliot,* 149 U. S. 268, 37 L. ed. 728, 13 Sup. Ct. 837; *Brown* v. *Chicago, R. I. & Pac. Ry. Co.,* 64 Iowa, 652, 21 N. W. 193; *Richmond & Danville R. Co.* v. *Allison,* 86 Ga. 145, 11 L. R. A. 43, 12 S. E. 352; *Mississippi Central R. R. Co.* v *Hardy,* 86 Miss. 732, 41 S. 505.

Exceptions were taken to two statements made by plaintiff's attorney in the closing argument to the jury: one in effect that the indications in the case were that defendant was paying more money for lawyers to defend the case than it did in having the running board looked after and kept clean; and the other that the defendant had tried to keep the plaintiff along until this case was disposed of—gave him a job of tender or third hand.  In neither of these statements was there reversable error.  As to the former the evidence showed the particular employee upon whom rested the duty of keeping the machine clean, and his daily wage.  It was observable to the jury that three lawyers were engaged defending the case.  It cannot be said that the indications were not to some extent at least in substance as stated, and if the jury thought the argument not warranted the statement was harmless.  As to the latter, we need not refer particularly to the evidence, suffice it that the attorney was within its fair import.

Since the sole error found upon the record is one touching the question of damages only, the question arises whether a new trial should be granted of the whole case, or only of that part affected by the error. It is laid down in Tidd's Practice, 1179, that "if the judgment consists of several distinct and independent parts, it may be reversed as to one part only; as for costs alone, or damages in *scire facias,* or for damages and costs in a *qui tam* action," referring to cases which support the text: *Bellew* v. *Asylum,* 1 Str. 188; *Henrique* v. *Dutch West India Co.,* 2 Str. 807, 2 Ld. Raym. 1532; *Sir Thomas Frederick* v. *Lookup,* 4 Burr. 2018. The case of *Hutchinson* v. *Piper,* 4 Taun. 555, was a *qui tam* action. The plaintiff was nonsuited below. Gibbs, J., said: "If a new trial be granted because a judge has improperly nonsuited the plaintiff, I apprehend the new trial must take place upon the whole record, not but that there may be cases in which the new trial may be restrained to a particular part of the record, as if the judge gives leave to move on a point or part only, upon a stipulation understood, between the judge and the counsel, that he shall not move on anything else, or if on the evidence, the court above thinks that justice has not been done, but that they shall do more injustice by setting the matter at large again, they may restrict the parties to certain points on the second trial." In *Davenport* v. *Bradley,* 4 Conn. 309, the error was confined to the assessment of damages. It was held that the judgment must be reversed, but that the reversal will not open the cause below beyond the exigencies of justice; that when there exists an error in the assessment of damages only, it is entirely incompatible with justice that the previous proceedings in the cause should be set aside; that so far as they are legal they must be permitted to remain. And the reversal was so limited. To the same effect are *Zaleski* v. *Clark,* 45 Conn. 397; *Fritts* v. *New York & N. E. R. Co.,* 63 Conn. 452, 28 Atl. 529.

This rule is applicable as well where the trial was by jury, and it was applied in the following cases: *Winn* v. *Columbian Ins. Co.,* 12 Pick. 279; *Boyd* v. *Brown,* 17 Pick. 453; *Ryder* v. *Hathaway,* 21 Pick. 298; *Kent* v. *Whitney,* 9 Allen, 62, 85 Am. Dec. 739; *Pratt* v. *Boston Heel & Leather Co.,* 134 Mass. 300; *Lisbon* v. *Lyman,* 49 N. H. 553; *Payne* v. *Cutler,* 13 Wend. 605; *Braunsdrof* v. *Fellner,* 76 Wis. 1, 45 N. W. 97; *Jones* v. *Coffey,*

109 N. C. 515, 14 S. E. 84; *Smith* v. *Whittlesey,* 79 Conn. 189, 63 Atl. 1085. Many more authorities might be cited, but it is unnecessary. We think upon the record that to put the plaintiff to the expense of, a new trial of the whole case, when all questions involved have been correctly tried and, so far as appears rightly determined, except the one question of damages, would be an injustice to him. And as the defendant's just ground of complaint is confined accordingly, its legal right is satisfied by a reversal in effect limited to that question.

*Judgment affirmed except as to the question of damages, and as to that question, judgment is reversed and cause remanded.*