BROWN, ADM'X, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

1. **Railroads:** RISKS ASSUMED BY EMPLOYES: DANGERS FROM SNOW-BANKS. Following the case of *Dowell v. The B., C. R. & N. R'y Co.,* 62 Iowa, 629, *held* that the dangers from snow-banks are inseparable from the operation of railroads, when snow prevails and is removed from the track; that employes, when they enter the service, assume the risk of such dangers; and that railroad companies are not chargeable with negligence in leaving the accumulations of snow which it removes from the track in proximity thereto, even though some degree of danger to employes engaged in the operation of trains is thereby created.

2. **Personal Injury:** MEASURE OF DAMAGES: PROSPECTIVE EARNINGS. In an action based upon personal injury caused by negligence and resulting in death, in estimating the measure of damages which the estate of the deceased may recover, it is proper to consider his calling at the time of his death, his ability, the amount of his earnings, and like circumstances; but evidence is incompetent, in such a case, to prove that he was in the line of promotion in his calling, and that, if promoted, his earnings would have been increased.

*Appeal from Washington Circuit Court.*

THURSDAY, OCTOBER 23.

PLAINTIFF's intestate, while in defendant's employ as a fireman on one of its engines, was killed, by being knocked from the engine by a bank of snow near the track and run over by the train. This action is prosecuted by plaintiff to recover the damages to the estate caused by his death. There was a verdict and judgment for plaintiff, and defendant appeals.

*M. A. Low,* for appellant.

*E. W. Stone,* for appellee.

REED, J.—I. The accident in which decedent lost his life occurred on the night of the sixteenth of February, 1881. He had been in defendant's employ about eighteen months. The engine on which he was employed was ordinarily used in the yard at Washington,

1. RAILROADS: risks assumed by employes: dangers from snow banks.

but was occasionally sent out on the road as an extra. A few days before the accident a snow storm had prevailed along the line of defendant's road, which blockaded the track to such extent as to prevent the running of trains. On the morning of the 15th, the engine on which Brown was employed was sent out from Washington with a snow-plow, to open the track through to Knoxville. This snow-plow was attached to an. ordinary flat car which was pushed ahead of the engine. It is a device in common use for removing snow from railroad tracks. On that day they succeeded in opening the road to Knoxville Junction, a point some distance east of Knoxville. They remained there during the night, and, as the snow-plow was out of repair, they left it there, and went through the next day with the engine to Knoxville, arriving there at 5 or 6 o'clock in the evening. When they arrived at Knoxville they received orders to return to Washington that night with a train of stock-cars. This train was hauled by two engines, the one on which Brown was employed being placed next to the cars, and the other ahead of it. The leading engine did not have a head-light, and the one on which Brown was employed was without a pilot. When the train was near a station called Delta, Brown's attention was attracted by a bright light which shone for a moment under the engine, and, going to the gang-way between the engine and tank, he took hold of the handles on the side of the cab and swung out and looked under the engine. While in this position, and while his head and shoulders were outside of the cab, he was struck by a snow-bank and knocked from the engine, and run over and instantly killed by the train. The train at this time was moving at the rate of from sixteen to eighteen miles an hour. The snow-bank was in substantially the same condition in which it was left by the snow-plow on the 15th. The track was clear, so that the train had no difficulty in passing. The space between the outside of the cab and the bank was from fifteen inches to two feet wide. There were no danger sig-

nals placed at the bank, and it was not customary on defendant's road to place such signals at snow-banks. No signals were given by the leading engine to indicate that the train was approaching a place of danger, and it was not the custom to sound such signals when approaching places like the one in question. There is no conflict in the evidence as to the facts narrated above. They are all clearly proven, and they are all the facts which are material to the questions which we are required to consider in the case.

Plaintiff's claim is, that defendant was negligent in permitting the snow-bank to remain in such close proximity to the track, and in starting out the train without a headlight on the leading engine, and in omitting to place signals near said bank to indicate to train men that the place was dangerous; and that the engineers were negligent in running the train at a high rate of speed into the cut, without sounding some signal to admonish the other employes on the train that it was approaching a place where danger might be apprehended.

The court gave the following instruction to the jury: "If you find, from a preponderance of the testimony in this case, that the plaintiff's decedent, at the time of his death, was engaged as a fireman on one of defendant's engines, used in the operation of a snow-plow, and you find further that the defendant, or its employes, from a failure to exercise reasonable care and forethought, used a snow-plow in breaking up the snow blockade and opening up its road, which left the roadway in a hazardous and unsafe condition, because of its being too narrow to permit of the safe passage of trains and the employes thereon, and you further find, from the preponderance of the testimony, that the defendant's employes, who had charge of the section where the accident is alleged to have occurred, failed to exercise ordinary care and diligence and forethought to widen out the roadway and put it in a safe condition, and that, in consequence of such failure on the part of the defendant and its employes, decedent,

Brown, while engaged as a fireman, as alleged, and while exercising reasonable care and prudence and forethought for his own safety, was knocked off the train and killed, the defendant is liable."

The doctrine of the instruction clearly is that, if the snow-bank was left by the snow-plow in such proximity to the track as to be dangerous to the lives and persons of the employes engaged in operating the trains on the road, and such time had elapsed since the opening of the road by the snow-plow as that the bank might have been removed by the exercise of reasonable diligence, but it was not so removed, and the injury was caused thereby, the defendant is liable, or, in other words, defendant was guilty of such negligence, in permitting the snow-bank to remain in such proximity to the track as rendered it liable to its employes for any injuries they might sustain in consequence thereof while engaged in operating its trains.

It was held by this court, in *Dowell v. B., C. R. N. R'y Co.,* 62 Iowa, 629, (a case which was decided here since the case at bar was tried in the circuit court,) that the dangers from snow-banks are inseparable from the operation of railroads, where snow prevails and is removed from the track, and that the employes when they enter the service assume the risk of such dangers, and that the railroad company is not chargeable with negligence in leaving the accumulations of snow which it removes from its track in proximity thereto, even though some degree of danger to its employes, engaged in the operation of its trains, is thereby created.

The doctrine of the instruction in question is very clearly in conflict with this holding. It is claimed by plaintiff, however, that there are facts in this case which distinguish it from the *Dowell* case; and that the rate of speed at which the train was running at the time of the accident, the fact that it was sent out without a headlight on the leading engine, that no danger signals were placed at the snow-bank, and none were sounded by the engineer on the approach of

the train to the place of the accident, are all matters which should be considered in determining whether defendant was guilty of such negligence as renders it liable for the injury complained of. But it will be observed, as we have already pointed out, that the instruction places the right of recovery on the single fact of the dangerous proximity of the snow-bank to the track. The other acts and omissions enumerated are excluded from the consideration, and the liability of the defendant is held to be established by that fact alone. Neither the instruction in question, nor any other part of the charge, submits to the jury for their consideration the question whether there was such negligence or mismanagement of the train or engines as would render defendant liable for the injury. We cannot, then, consider that question.

II. Plaintiff was permitted, against defendant's objection, to prove that firemen, employed on defendant's engines, when they had sufficient experience and had acquired the requisite skill, were sometimes employed as engineers, and, when so employed, they were paid an increased compensation for their services. This evidence was admitted for the purpose of showing what the earnings of the intestate would probably have been if he had lived the natural period of his life.

2. PERSONAL injury : measure of damages : prospective earnings.

In our opinion it was not competent. In determining the damages which the estate of a decedent will sustain in consequence of his death, it is proper to consider his calling at the time of his death, his ability, the amount of his earnings, and the like circumstances; and the estimate should be made with reference to such facts as actually existed at the time of his death, and such as it is reasonably certain would have occurred in the future, but for his death. Plaintiff's intestate was not an engineer at the time of his death. It is not claimed that he possessed the skill requisite for that employment, and whether he ever would have acquired that skill was uncertain. The evidence should, therefore, have been excluded.

Other questions have been argued by counsel, but, as they may not arise on a re-trial of the case, we do not consider them. For the errors pointed out, the judgment of the circuit court must be

REVERSED.