The Richmond & Danville Railroad Co. *v.* Allison.

1. No fixed rule exists for estimating the amount of damages from permanent injuries to the person. The amount should be reasonable and just to both parties, and should compensate the injured one for the loss of money which he would probably earn had not the injuries occurred.

v 86-10

2. While it is proper to prove the age, habits, health, occupation, expectation of life, ability to labor and the probable increase or diminution of that ability with lapse of time, the rate of wages, etc., and then leave it to the jury to assess the damages, it is improper to allow proof of a particular possibility, or even probability, of any increase of wages by appointment to a higher public office, especially where the appointment is somewhat controlled by political reasons.

November 10, 1890.

Damages.  Evidence.  Railroads.  Before Judge VAN EPPS.  City court of Atlanta.  June term, 1890.

Action for damages.  It was conceded by the defendant that the plaintiff was entitled to recover, and the only issue was as to the amount.  The jury found for the plaintiff $11,250, and the defendant moved for a new trial on the ground that the verdict was excessive, and on the two grounds fully set forth in the opinion. Other grounds therein referred to were as follows:

(6) The court charged: "Since the plaintiff would, if he had not been hurt, have received the fruits of his labor year by year as earned, but must now receive the sum awarded, if any, for permanent injuries, in cash all at once and by your verdict, it would be your duty to reduce the sum, when ascertained, to its present cash value."  Error, in failing to explain what was meant by the reduction of the sum to its present value.

(7) In charging as to the mortality and annuity tables which were in evidence, the judge said that "the means of ascertaining the conclusions reached by pursuing their methods will appear to you upon examination of those tables."  Error, because the tables only, without the note explanatory of them, had been introduced.

JACKSON & JACKSON, for plaintiff in error.

HOKE & BURTON SMITH, *contra.*

SIMMONS, Justice.

Allison sued the railroad company for damages, and obtained a verdict.  The railroad company moved for

a new trial, upon several grounds, which will be found in the official report. The view we take of the case renders it unnecessary to discuss any of these grounds except the 5th and the 9th. The 5th is as follows:

Because the court erred in charging the jury as follows: " Another item of damages alleged by the plaintiff is for permanent injuries. He says that he has been permanently injured, and by reason thereof his capacity to work and earn money by his labor throughout his future life has been practically destroyed. If this be true, he would be entitled to further compensation on that account. The burden is on the plaintiff to show the fact that his capacity to labor and earn money has been permanently impaired, and the extent of such impairment, or to furnish *data* to the jury from which they may be able to ascertain his financial loss in this respect. In passing upon this question, you would ascertain from the evidence whether the plaintiff's capacity to labor and earn money is in point of fact practically destroyed, or in part impaired, by his injuries, and if so, the extent of such impairment, and whether it will extend to the future, and through the remainder of his life; and if you so find, you will award him such a sum as you think reasonable and just in view of the evidence and the extent of such injury, and in view of all the facts and circumstances of this case as disclosed to you in the evidence. If you believe from the evidence that the plaintiff has not suffered any permanent injury as the result of the injuries mentioned in the evidence, you would not allow him anything in the way of damages for a permanent injury. No fixed rule exists for estimating this sort of damage. The plaintiff's age, his habits, his strength, sex, vocation, the rate of wages earned by him in the past by his labor, his prospects of obtaining steady remunerative employment in the future, prospects of increased earnings in the future

by additional experience and skill required, if there be evidence on this point and that evidence in your opinion is definite and tangible, these circumstances, in so far as they may be illustrated by the evidence, are all circumstances proper to be taken into account."

The plaintiff in error objects to that portion of the charge set out which says, "No fixed rule exists for estimating this sort of damage," and insists that a fixed rule does exist, to wit: that such a sum should be allowed the plaintiff as would make his future income the same as it would have been had he not been injured, taking into consideration the probabilities of disease, decreased capacity to labor and the duration of life. It is insisted that the charge as given puts no limit upon the finding of the jury; that whilst it calls to their attention elements which they could consider, it does not restrict them by the fixation of a principle which should control their conclusion.

This court has considered this question upon different occasions, and in several cases has said that there is no "Procrustean rule," or fixed rule, in cases of this kind. See *Ga. Pac. Ry. Co.* v. *Freeman*, 83 *Ga.* 586; *Central R. Co.* v. *Thompson*, 76 *Ga.* 785; *S. F. & W. Ry. Co.* v. *Stewart*, 71 *Ga.* 428(1), 446; *Davis* v. *Central R. Co.*, 60 *Ga.* 329(4). The last case in which the question was considered was *Georgia Pacific Rwy. Co.* v. *Freeman*, *supra*, where the exact words complained of were approved by this court. Upon the request of counsel for the plaintiff in error, we allowed him to review that decision. We have carefully considered his argument, and have devoted much time to reading the text-books and reports of cases decided by other courts to ascertain if we could find any authority or decision holding that there is a fixed rule to be given to the jury which must control them in estimating the damages to a person who has been permanently injured by

the carelessness and negligence of a railroad company
or natural person ; but we have been unable to find a
decision of any court or a *dictum* of any text-writer
holding that there is a fixed rule for measuring the
damages in such cases.   And in the nature of things it
is impossible for a court to prescribe any fixed rule, be-
cause it is impossible to prove such exact data as would
authorize a court to prescribe one.   It is impossible for
any witness to testify to the exact time that the injured
person would have lived if he had not been injured;
it is impossible to say whether the person would have
remained in good health during his whole life, or
whether he would have lost little or much time by sick-
ness or idleness or the loss of an opportunity to labor;
it is impossible to say whether he would have con-
tinued to earn the same amount of money during his
whole life, whether he would have earned more and
how much more, or less and how much less; whether
he would have remained in the same occupation or
would have abandoned that and pursued another more
lucrative or less so.   Unless these and other facts which
might be enumerated could be shown the jury, we do
not see how a fixed rule to measure the damages for a
permanent injury could be prescribed to the jury.   It
may be said, however, that the life-tables put in evi-
dence would show a man's expectancy of life, and that
the amount he was earning at the time he was injured
would be a sufficient basis upon which to prescribe such
a rule; but we do not think that this would in all cases
be fair either to the plaintiff or to the railroad company.
If the plaintiff were a young man of character, capacity
and industry, and had chosen his occupation and com-
menced its pursuit, his yearly income at first might be
small, but in a few years he might be able to increase it
very largely; yet, under the rule contended for, he
would be confined during his life to the small income

he was making at the commencement. On the other hand, if the plaintiff were an aged or a middle-aged person making a large yearly income, it would be unfair to the railroad company to take that income and his expectancy of life as the sole basis to determine the amount of his recovery; because our experience shows that a man in declining years has not ordinarily the same capacity to labor and earn money as a young man. It is then that sickness, inability and indisposition to labor come upon him more and more each year as he grows older. These and like facts should then be taken into consideration by the jury in behalf of the railroad company. None of these things can be proved with such exactness as would authorize a court to prescribe a fixed rule.

As was said by the Supreme Court of the United States in Vicksburg, etc. R. Co. v. Putnam, 118 U. S. 554: "It has never been held that the rules to be derived from such tables or computations must be the absolute guides of the judgment and the conscience of the jury. On the contrary, in the important and much-considered case of Phillips v. London & Southwestern Railway, above cited, the judges strongly approved the usual practice of instructing the jury in general terms to award a fair and reasonable compensation, taking into consideration what the plaintiff's income would probably have been, how long it would have lasted, and all the contingencies to which it was liable; and as strongly deprecated undertaking to bind them by precise mathematical rules in deciding a question involving so many contingencies incapable of exact estimate or proof." We therefore think that it is better for both parties to let the jury look at these things as a whole, in the light of common sense and their own experience, and let them make such a compensation in their verdict as would be reasonable and just to both

parties, not giving to the plaintiff a large sum with the purpose of enriching him, but compensating him for the loss of money which he would probably earn had he not been injured and thereby prevented by the negligence of the defendant. These remarks, of course, apply only to the measure of damages for the permanent injury. It is not contended that any fixed rule can be prescribed as a measure of damages for pain and suffering. We therefore reaffirm the ruling in *Georgia Pacific R. Co.* v. *Freeman, supra.* On this subject see 2 Thomp. Trials, §§2077-8; Redf. Rwys. 309 *et seq.*; 2 Wood Rwy. L. §317; Whit. Smith Neg. 474; Pierce R. R. 301; Smith Dam. 382 *et seq.*; 2 Shearm. & Redf. §758; Wood's Mayne Dam. 596, §627; 2 Sedg. Meas. Dam. 547; Pollock Torts, *161-2; Field Dam. 614-15.

The 9th ground complains that the court erred in admitting the following evidence over the objection of counsel for the defendant, to wit: "Q. How soon after his injury (referring to Mr. Allison) were there any vacancies to which promotions could have taken place? A. Vacancies were shortly afterwards,—say certainly in the course of the next three to six months, I think, after Allison was hurt. According to Mr. Allison's standing and the classification which I give, his prospects for promotion to one of these places was good." The defendant objected to this testimony and all other evidence of the witness tending to show prospects of promotion, as being simply the opinion of the witness and showing a possibility too remote to be the basis of consideration by the jury in finding damages. We think this exception is well-taken, and that the court erred in allowing the testimony complained of to go to the jury. The testimony of this witness shows, in substance, that he was the assistant superintendent of the railway mail service of the fourth division; that Allison was a postal clerk under him, and that he had special supervision of

Allison's record and work; that the next class above Allison in the line of promotion at the time he was injured was "Class 5," and that the salary in that class was $1,300 a year; that Allison was receiving when injured $1,150; that Allison's standing in regard to the basis of promotion was "first-class"; that there was no vacancy in the class above Allison at the time he was injured, but two vacancies occurred in the course of from three to six months thereafter; that there were three men of Allison's class, including Allison, and that the other two stood as well as he did, and both were older than Allison; one had been in the service longer and the other a shorter time than Allison; political considerations enter somewhat into the appointment of clerks; the promoting power is at Washington, the office here is the recommending power; a vacancy in the class above Allison might be filled sometimes from other routes, and men taken from another route and put in who occupy, say, a second rank; it is in the power of the department under the rules to do that. There is no certainty at all where there is a vacancy in the position of chief clerk—the clerk in charge—that one of a lower grade on the same route will go up,—no more than in any other business; it is not guaranteed.

We think this evidence shows that Allison's promotion was too uncertain, and the possibility of an increase of his salary from $1,150 to $1,300 too remote, to go to the jury and for them to base a verdict thereon. While it is proper in cases of this kind to prove the age, habits, health, occupation, expectation of life, ability to labor and probable increase or diminution of that ability with lapse of time, the rate of wages, etc., and then leave it to the jury to assess the damages, we think it improper to allow proof of a particular possibility, or even probability, of an increase of wages by appointment to a higher public office, espe-

cially where, as in this case, the appointment is somewhat controlled by political reasons. The deputy-clerk of this court, for example, is very efficient and faithful, and if there should be a vacancy in the office of clerk of the court, it is not only possible, but very probable, that he would be appointed to fill the vacancy, thereby obtaining a much larger salary than he now receives; but if he should be injured as Allison was, and were to sue the railroad company for damages, we do not think it would be competent for him to prove the possibility or probability of his appointment to fill a vacancy in the office of clerk, especially as the *personnel* of the court, upon which such appointment must depend, might change in the meantime. To allow the jury to assess damages in behalf of the plaintiff on the basis of a large income arising from a public office which he has never received and which is merely in expectancy and might never be received, or if received at all might come to him at some remote and uncertain period, would be wrong and unjust to the defendant. We believe the rule of most of the railroads in this State is to promote their employees. An employee commences at the lowest grade, and if he is competent, capable and efficient, he is very likely to be promoted upon the happening of a vacancy above him. If one occupying a lower grade of service were injured, would he be allowed to prove, unless he had a contract to that effect, that his prospects of promotion to a higher grade and better salary were good, and would the jury be allowed to base their calculation and estimate of the damages upon a much larger salary which he had never received, but merely had a prospect of receiving? It will be observed that the testimony in this case shows that there were two others in the same class with Allison, equally competent and efficient as he was, and it is by no means certain that Allison would have been

preferred to each of them in case of vacancy, and promoted above them ; so it could not be said that he was in the direct line of promotion. Pierce Railroads, 303; Brown *v.* Cummings, 7 Allen, 509 ; Boyce *v.* Bayliffe, 1 Camp. 58 ; Brown *v.* Railroad Co., 64 Iowa, 656.

This testimony being illegal, and having been objected to, and it being very probable from the amount of the verdict that the jury based their calculation upon the increased salary which Allison would have received if he had been promoted, we think it damaged the defendant, and we grant a new trial upon this ground.

The other grounds of the motion we will not discuss, except to say that if there are any errors contained therein, the court below will doubtless correct them on the next trial. If the explanations of the mortuary and annuity tables were not put before the jury, this can be done at the next trial if counsel so desire. The same may be said as to the failure of the court to explain to the jury what was meant by the reduction of the sum, when ascertained, to its present cash value, which is complained of as error in the 6th ground of the motion. If counsel desires more specific instructions at the next trial, he can request the court to give them. *Judgment reversed.*