GEORGE L. TOMLINSON *vs.* CLEMENT BROS., INC.

Cumberland.        Opinion April 14, 1931.

*Hinckley, Hinckley & Shesong*, for plaintiff.
*Charles L. Donahue,*
*Paul E. Donahue,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

BARNES, FARRINGTON, JJ. Concurring in result.

DUNN, J. The driver of an automobile brought this action in the Superior Court in Cumberland County to recover damages for personal injuries from being struck by a passing motor truck which, different counts in the declaration allege in differing ways, the owner's servant, in the course of his employment, negligently operated along a highway. The declaration also alleges property damage. The plea was the general issue.

At the close of the evidence for the plaintiff, the defense rested its case without offering evidence, and argued that a verdict be directed for defendant. The motion was denied. Defendant noted an exception. The case was committed to the jury. Plaintiff, who lost his left arm, and whose automobile was slightly damaged, had the verdict in the sum of fifteen thousand dollars. Defendant filed a motion, for consideration by this court, for a new trial. The motion assigns the usual grounds.

Apart from the assignment of the motion that damages are excessive, the bill of exceptions and the motion raise the same questions. The brief for defendant does not argue damages. Therefore, the ground that the award is inordinate, is regarded as waived. In view of this, the bill of exceptions will suffice to determine the con-

troversy. Accordingly, for the purpose of dismissing it as unnecessary, the motion is overruled.

On the twenty-second day of March, 1930, the plaintiff and two other young men, the three seated in a Ford roadster, each in contact with the one next him, plaintiff at the left and driving, were traveling in Maine. Between six and half after that hour of the clock, postmeridian, while there was yet daylight, they approached Donnell's bridge in the town of Wells, from a westerly direction.

The bridge was a masonry structure, approximately twenty-seven feet in length and seventeen feet in width, built on the principle of the arch, over the Ogunquit River. The block of concrete which formed the span of the bridge, and served as the roadway thereon, had a tarred surface, corresponding to that of the road on either side. Close to the bridge, on the north, was a rail fence. The fence was somewhat longer than the bridge, as a photograph shows. On the south, that side towards which it would have been for plaintiff to steer the course of his automobile to pass an approaching vehicle, a fence extended near the edge of the bridge for its length, and thence at an acute angle westerly, and a like angle easterly, the distance, bridge and all, as a witness estimates, of one hundred and twenty-three or one hundred and twenty-four feet. This fence, this opinion will hereafter, for convenience, call the "long fence."

The bridge was narrower than the rest of the highway. As plaintiff neared the approach to the bridge, his car running thirty to thirty-five miles an hour, he saw, his testimony is, two hundred feet ahead, the truck on-coming at a rate of speed comparable to, perhaps faster than, that of his own machine. Plaintiff testified: "It" (the pronoun referring to the truck for antecedent) "seemed to be rolling a lot. The body was rolling around and the truck coming fast, and I didn't think when I saw it coming, he had very good control of it, the way it was coming, so therefore I pulled to the extreme right of the highway to clear it." Again, "When I got on the extreme right-hand side of the road, I thought I was safe."

These excerpts are far from completing the picture of the case.

There was legally admissible evidence, and other evidence received without the interposition of objection (which became what the decisions call consent evidence, *Moore* v. *Protection Insurance*

*Co.*, 29 Me., 97, 102 ; *Brown* v. *Moran*, 42 Me., 44), not essential to quote literally, to justify factual findings that, when plaintiff first saw the truck, it was beyond the easterly end of the long fence, and on its own side of the highway. Plaintiff drove on the approach to the bridge, and continued onto the bridge itself. His roadster, five feet and five inches in width over-all, to use a witness' words, he brought to within five or six inches of the fence on his right, but he did not bring it to a stop. There was, evidence shows, between the caps on his left wheels and the fence on that side of the bridge, clearance of eleven feet.

The truck, speaking of an evidentially warranted inference, because the evidence does not describe the particular truck, but a duplicate or similar one, had a body seven feet eleven and one-half inches wide, hung high enough to clear the tops of the mudguards on the roadster.

For anything that appears, the truck could reasonably have been kept in course to the right of the center of the roadway on the bridge until it and the roadster had passed without interference, but it was not. Plaintiff had driven almost the length of the bridge, when the truck, having crossed to its left of the center of the roadway, collided with his car.

The shock did not immediately disturb any of the occupants of the roadster. Plaintiff and his companions heard a click, and a scraping sound as though against the mudguard, and, thinking such the extent of probable injury or damage, kept on until at a distance of about one hundred feet, plaintiff "noticed a numbness," and stopped his car. Where the truck was stopped is not shown.

Plaintiff had been driving, to recur to his testimony, with both hands on the steering wheel, his left elbow resting on the frame of the opening in the door, and protruding not more than two inches. When his car was at rest, plaintiff discovered that the instantaneous impact of the rapidly passing truck had severed his arm near the shoulder, no sensation registering.

The arm lay in the street; almost back to the bridge. The left door handle of the roadster was broken off, along that side of the body of the car was a single scratch, and the bow of the top frame was bent.

The bill of exceptions might well be overruled without an opinion,

on the simple statement that there was evidence to sustain the facts, did it not seem necessary to discuss contributory negligence.

Contributory negligence, it is true, would defeat the action, and plaintiff had the burden of proof.

The exercise of ordinary prudence requires the driver of a motor vehicle, suddenly and unexpectedly confronted with peril, although it arises from the fault of another, to seek to avoid a collision, if it is reasonably practicable to do so. *Skene* v. *Graham*, 114 Me., 229; *Ritchie* v. *Perry*, 129 Me., 440. Not fury for speed, nor indifference to danger, nor undue insistence upon the technical right of way, but forbearance, becomes every operator of a motor vehicle on the public ways. *Marquis* v. *Fitts*, 127 Me., 75. The mere fact that one person has violated a road regulation does not justify another in taking the law into his own hands and punishing him. Whether, in the presence of danger, the driver of an automobile has taken the proper course, depends upon all the circumstances of the individual case, having reference not to the highest degree of care, nor even the degree of care which a highly prudent person would use, but upon the average of reasonable care.

Defendant did not attempt to show that the accident happened in any other manner than as proven by plaintiff. Where there is no dispute on the evidence as to the facts, the general rule is that it is for the court to apply a conclusion of law, or, more properly, a canon of responsibility. This rule, however, is more pertinent to questions of contract than to those of tort. In negligence cases, where, notwithstanding the evidence may not be conflicting, exigences are to be weighed, or matters of expediency considered, except the case is so palpably right or wrong that men of fair mind and ordinary intelligence could not reasonably disagree in their opinion about it, the question is for the jury and not for the court. *Lasky* v. *Canadian Pacific Railway Company*, 83 Me., 461.

Extraordinary instances may turn up now and then, but ordinarily contributory negligence is for the jury. A verdict should not be directed for a defendant if, in any reasonable view of the testimony, under the law, the plaintiff can recover. *Nugent* v. *Boston C. & M. R.*, 80 Me., 62. If a verdict would be clearly against the evidence, the question is one of law. *Brown* v. *European & North American Railway Company*, 58 Me., 384.

The rights and duties of the plaintiff operating his roadster, and the driver of the motor truck, were reciprocal. Unless there were that which otherwise informed him, or ought to have informed him, each could rely to some extent on the exercise of due care by the other. In other words, it was for them to approach and pass, each in qualified expectation that the other would use consistent caution, and both exercising commensurate watchfulness. To recover for injury and damage negligently done by the owner of the truck, it was incumbent on the plaintiff to establish that he himself, at the time of the infliction thereof, was free from fault directly and proximately contributory thereto.

When plaintiff drove on the bridge approach, he had an undoubted right to do so, as the truck was a sufficient distance away. The truck, as has before been mentioned, was on-coming rapidly, and rolling. The evidence offers rational explanation for the rolling. This is it. A heavy truck, such as the jury could find that of the defendant to have been, with pneumatic tires on the front wheels, and solid tires on the rear wheels, is likely to deviate from course when driven "light."

But, though the truck, when first seen, was traveling rapidly and rolling, there is no evidence, direct or inferential, that the truck was to its left of the median line of the road. And, though plaintiff bears witness that he thought the driver did not have very good control of the truck, he does not say the truck was out of control, or that its driver was not observing the law of the road.

The situation of danger arose when the truck was close to the roadster, then nearly across the bridge. This created an emergency. Did plaintiff, in the jaws of danger, where instant action by him was requisite, act as an ordinarily careful and prudent man would reasonably act? This question was one to be decided, not by a careful calculation afterwards, nor by the conduct of a man under no excitement, with time to deliberate, but by what a man of average circumspection would have done under like surroundings and in the like situation.

It was not at the distance of two hundred feet, but when plaintiff was not far from the east end of the bridge, that the truck was moving uncertainly forward, at unretarded speed. It was on plaintiff's side of the road; his own car was already within six inches of

the fence. The fence precluded steering farther to the right; swerving to the left would have placed the car in front of the truck. Had plaintiff stopped his car, would it have availed anything? Was plaintiff rash and imprudent in driving from the bridge? Was he negligent in a plight likely to produce fright or terror? He was not bound to use infallible judgment. The standard of care depends upon the nature of each act.

Being rightly upon the bridge, plaintiff could not be charged with contributory negligence as a matter of law, if, in an emergency, he erred in judgment. It is easy, in retrospect, to be wise. For ordinary care, the common law, in respect to travelers upon highways, adopts as its standard such care as persons of common prudence generally exercise. *Farrar* v. *Inh. of Greene*, 32 Me., 574.

But, contend counsel for defendant, there was indubitable evidence of contributory negligence on the part of the plaintiff, in voluntarily and unnecessarily resting his arm on the door of the car, his elbow projecting, and in keeping the arm and elbow in that position after he knew, or ought to have known, danger in time to avert it.

Even so, the declaration contained allegations of property damage, under which evidence was introduced. Had plaintiff's arm not been where it was, the collision would have occurred, with damage to property only. The question of responsibility for such damage was for the jury.

It is easy to contemplate a person riding in a vehicle, his arm projecting in such a way as to be causal to injury, as a matter of law.

In the instant case, with its attendant circumstances, the question of whether plaintiff was negligent in extending his elbow, in fair inference not beyond the handle on the roadster door, and whether this coöperated with negligence on the part of the defendant to bring personal injury on the plaintiff, rested for determination upon experience and judgment.

Where, from the facts, reasonable men may reasonably make different deductions, or come to different conclusions, the case is for the jury. *Lasky* v. *Canadian Pacific Railway Company*, supra.

It was for the jury to settle whether and how far, driving as plaintiff drove, or any other act of plaintiff, as the jury should

find the fact from the evidence and all legitimate inferences, viewed most favorably for him, was indicative, if at all, of such want of care as ought to bar his recovery.

*Motion overruled.*
*Exception overruled.*