212 P.2d 1041

**TURRIETTA v. WYCHE.**

No. 5206.

Supreme Court of New Mexico.

Dec. 17, 1949.

Wilson & Whitehouse, Albuquerque, for appellant.

Adams & Chase, Albuquerque, for appellee.

BRICE, Chief Justice.

This action was brought to recover damages for alleged injuries to plaintiff (appellee), and to his truck, caused, it is said, by defendant's (appellant's) negligence. The case was tried to a jury which returned a verdict for the plaintiff for

$15,000. From a judgment for that sum, the defendant prosecutes this appeal.

The defendant asserts that his motion for an instructed verdict should have been sustained by the trial court because (as it is said) there was no substantial evidence introduced that would support a verdict and judgment for the plaintiff; and if there was, then the plaintiff was guilty of such contributory negligence which, as a matter of law, was a proximate cause of the damage to plaintiff and his truck.

We are of the opinion there was substantial evidence introduced (which evidently was believed by the jury) that supports the verdict and judgment. There was evidence that would establish the following facts:

The plaintiff and his brother Luciana Turrietta were traveling south at night on Highway 85 in plaintiff's Plymouth pickup. About six miles south of Belen they saw approaching them from the south a motor vehicle which appeared to be about three-fourths of a mile away when first seen. The moon was "partly shining." Plaintiff was driving with the window down, his left elbow resting on the top of the lower part of the door, and his left hand grasping the steering wheel. The defendant was driving the oncoming vehicle, with its left wheels about two feet left of the center of the highway, thus obstructing plaintiff's lane of traffic. Defendant was driving a Chevrolet one and one-half ton truck, with a bed a little less than eight feet wide, which extended over the outside of the wheels. The bed was made of heavy lumber bolted to upright stays along the outside of the bed, which was about six feet high. The plaintiff did not observe that defendant's truck was being driven with its wheels past the center of the road until the trucks were about thirty feet apart; too late to prevent a collision. Each was traveling about 30 or 35 miles per hour. Plaintiff pulled his car to the right, but the cars "sideswiped" in passing. The bed of defendant's truck scraped the door of plaintiff's pickup and sheared off his arm above and below the elbow; leaving his hand with a part of the forearm on the steering wheel. The portion of his arm sheared off fell to the ground when plaintiff got out of the truck. The highway blacktop was about 18 feet wide at the place of the accident, and the shoulder on each side about 8 or 8½ feet wide. The usable highway was about 16 or 17 feet wide on each side of its center.

The defendant was guilty of negligence per se in driving his truck with its left wheels to the left of the center of the road, which violated the following statute: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of

the roadway as nearly as possible." Sec. 68-511, N.M.Sts.1941.

■ It is not claimed by the defendant that it was not possible for him to have given plaintiff at least one-half of the main travelled portion of the highway, which was 18 feet wide. We have held many times that it is negligence per se for one to operate a motor vehicle in this state in a manner that violates a statute enacted 'for the protection of persons using highways. Silva v. Waldie, 42 N.M. 514, 82 P.2d 282; and see H. W. Bass Drilling Co. v. Ray, 10 Cir., 101 F.2d 316. Whether this negligence of the defendant was the proximate cause of plaintiff's injury was for the jury to decide. It obviously found against defendant; and this finding is supported by substantial evidence.

■ It is asserted that plaintiff was guilty of contributory negligence as a matter of law, which was the proximate cause of his injury, in that at the time of the collision he was driving with his arm or elbow resting on top of the lower portion of the door. This manner of driving a car is not unusual, as is generally known. To so drive is not negligence per se.

Whether it is negligence in any particular situation to do so, is ordinarily a question for the jury. Tomlinson v. Clement Bros., 130 Me. 189, 154 A. 355; Williams v. Haas, 52 N.M. 9, 189 P.2d 632.

■■ It is asserted that the plaintiff's injury was the result of his negligence in not avoiding the collision by turning to the right, after he knew, or in the exercise of ordinary care should have known, that the defendant was not going to obey the law and rules of the road, and remain in his lane of traffic. Ordinarily each driver of a motor vehicle approaching another on the highway may assume that the other will not violate the law or rules relative to the operation of passing vehicles, and will exercise due care to avoid an accident. Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921; Scritchfield v. Kennedy, 10 Cir., 103 F.2d 467. But this assumption does not apply if the injured person sees, or by the exercise of ordinary care and prudence should have seen, that the driver of the other motor vehicle will not obey the law, or is unable to turn to his right in time to avoid a collision. A reasonably prudent man would not continue into certain danger, and each driver is required to exercise that degree of care in operating his automobile. Scritchfield v. Kennedy, supra; 60 C.J.S., Motor Vehicles, § 318.

■ But such questions are ordinarily for the jury; and we do not find, under the circumstances of this case, that the plaintiff was guilty of contributory negligence as a matter of law. Olguin v. Thygesen, 47 N.M. 377, 143 P.2d 585; Law v. Saks, 241 Ala. 37, 1 So.2d 28; Bets-

chart v. Steel, 61 Cal.App.2d 517, 143 P.2d 81; Traylor v. Atlantic Greyhound Lines, 166 Va. 295, 184 S.E. 188; Johnson v. Burnham, 198 Wash. 500, 88 P.2d 833.

It is said that the trial court erred in admitting in evidence the testimony of the witness Lee York, taken by oral deposition and reduced to typewriting, regarding the plaintiff's loss of earning capacity. His testimony not objected to, was in effect that the witness was an expert automotive mechanic, teaching at Highlands University at Las Vegas, New Mexico, and that the plaintiff was a pupil of his, beginning on July 1, 1946 and ending at the date of his injury, taking a one year course in automotive mechanics under the witness. Plaintiff had no physical defects that affected his work or his study. In addition to his school work he was employed as a laboratory assistant to the witness in teaching precision work. His grades were "very nearly straight 'A's'—maybe a possible exception of one-quarter." His work was outstanding, superior in every way." As a laboratory assistant he received a salary of 75¢ per hour, or about $100 a month. He returned to his class in September 1947, but he could not continue precision work because of the loss of his arm, and he was given training for "parts-room work." This consisted of issuing parts and tools, making short repair orders and cost estimates, filling out orders, etc. He was not able to continue his training in precision

work because it requires two hands. Witness was familiar with the earning capacity of an automotive mechanic as of July, 1947. Plaintiff received his diploma in August 1947, as he had almost finished his course when the accident occurred.

The following testimony of the witness York was objected to upon the ground that it was highly speculative "and is not the proper way to measure the loss of earning capacity under the facts of this case," to-wit:

On the 3d of July 1947, the date plaintiff was injured, an automotive mechanic's capacity to earn depended upon his ability. Topflight mechanics earned from $75 to $150 per week. Some made as low as $35 a week, but in the witness' opinion they were not mechanics. The plaintiff was capable of becoming a "topflight" automotive mechanic. Parts employees earn from $25 to $50 a week. Due to the loss of his arm, his earning capacity was decreased by fifty percent. Witness tested him out on mechanical work such as tapit adjustments and the use of the feeler gauge, "miking" the crankshaft with micrometers; and he could not do it with one hand. These tests were made in September after the accident. Plaintiff was enrolled as a GI student. An "on the job training course" pays $24 for a 60-hour week, which is about what he was paid as an instructor for a 30-hour week. He is

now a counter clerk at a wholesale automotive parts house. It requires roughly five years work to qualify a topflight automotive mechanic. With one year training and no actual experience, boys trained by the witness are drawing on an average of $40 a week. Many of them never earn $75 a week. These high salaries are paid to highly skilled men. The witness averaged better than $3000 a year over twenty years, even during the depression, in this work. This was above an average. During 1939 the average was $35 to $40 a week. He earns $3850 a year as an instructor. He expected plaintiff to come out of his training as an automotive mechanic, and witness had a job for him. Automotive mechanics are not paid a salary, they are paid generally in New Mexico $2.50 per hour. They draw fifty percent of their time, based on a flat rate. He would have received this on a flat rate of $2.50 an hour.

Testimony tending to establish the future earning capacity of any person is necessarily speculative; but the best obtainable. Virginian R. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 407, 4 A.L.R.2d 1064, was a case in which an eighteen months old child lost both arms through the negligence of another. Bearing on this question the Court said: "The problem of assessing damages in a case of this sort is one which must be approached with common sense. The little child has been terribly injured; but there is nothing from which loss of earning capacity can be estimated with any degree of accuracy. The jury must do the best it can to estimate this, taking into account, of course, such matters as average earnings. They can consider, also, that the child is bright and intelligent and with proper education may be able to develop high earning capacity in intellectual pursuits. * * *"

In Texas Electric Ry. v. Worthy, Tex. Civ.App., 250 S.W. 710, 712, the Court said: "Earning capacity does not necessarily mean the actual earnings that one who suffers an injury was making at the time the injuries were sustained. It refers to that which, by virtue of the training, the experience, and the business acumen possessed, an individual is capable of earning. He might not actually have been earning anything at the time his earning capacity was impaired. This capacity, whatever it was, defendant in error was entitled to, unimpaired by any injury wrongfully inflicted upon him by another."

"It is evident that, by reason of unemployment, one might earn no money during the space of a month, or a year, or any other period of time, and yet one's capacity for work and ability to earn money during such period might be entirely unimpaired. The rule is that, although one may not work every day, nor all the time, damages may be estimated upon one's abil-

ity to earn money, rather than upon what one is either earning or has actually theretofore earned." Holmes v. California Crushed Fruit Co., Inc., 69 Cal.App. 779, 232 P. 178, 179.

"If the circumstances which were before the jury show that by reason of the injury he has become unable to perform the labor or transact the business which he was accustomed to transact or perform prior thereto, he is entitled to recover damages therefor; and from the nature of the investigation the amount of such recovery must be left to the wise discretion of the jury. It needs no evidence to show that a plaintiff in full health and vigor, who has lost an arm or a hand by reason of the negligence of the defendant, has had his earning power greatly impaired; and in such a case a jury would not be limited to nominal damages, although there should be no evidence that he was in the receipt of wages at the time of the injury, but would be authorized to give substantial damages." Storrs v. Los Angeles Traction Co., 134 Cal. 91, 66 P. 72, 73.

"As plaintiff was a graduate forester and capable of entering upon that work, it was not error to show its minimum wage, although he had never actually been so employed. He had not abandoned that profession. Should a graduate nurse be disabled before entering upon her profession, we believe it would be competent to show the income of that occupation as bearing on the question of loss of earning power, and, if so, why not in this case? 'Lessened capacity to earn in any actually available occupation may be shown * * by proper and satisfactory proof, and not left to mere conjecture,' from opinion by Mr. Justice Potter, in Helmstetter v. Pittsburgh Rys. Co., 243 Pa. 422, 426, 90 A. 203, 204. We find no error in the action of the trial judge in the admission of testimony on this branch of the case * *." De Haas v. Pennsylvania R. Co., 261 Pa. 499, 104 A. 733, 735.

"The salary or wages he had been earning before the injury which caused his death would be evidence of the value of that capacity, but is not conclusive, and his general experience as a wage earner and his qualifications for conducting a gainful occupation would also be proper considerations. * * *

"The rule for measuring damages resulting from death may then be briefly summarized as follows: It is that sum which would have compensated the deceased so far as money could do for the destruction of his capacity to carry on life's activities as he would have done had he not been killed, including the destruction of his earning capacity, for such time as he would probably have lived but with due allowance for the effect which the ordinary vicissitudes of life might have had upon his continued enjoyment of those ca-

pacities and, as far as destruction of earning capacity is concerned, for the fact that a present payment will be made in lieu of sums which, had he lived, would have been received at periodic times in the future." Chase v. Fitzgerald, 132 Conn. 461, 45 A.2d 789, 792, 163 A.L.R. 247.

Appellant cites Weinstein v. Wheeler, 127 Or. 406, 411, 257 P. 20, 271 P. 733, 62 A.L.R. 574; Richmond & Danville R. Co. v. Allison, 86 Ga. 145, 12 S.E. 352, 11 L.R.A. 43, and Marshall v. Dalton Paper Mills, 82 Vt. 489, 74 A. 108, 24 L.R.A.,N.S., 128, in support of his contention, that the trial court erred in admitting testimony to which objection was made. Appellant states:

"It is the position of appellant that the proper measure of damages in regard to loss of earning capacity is the difference between the ability of appellee to earn money in his usual vocation at the time of the accident and his ability to earn money in his usual vocation after the accident. * * *

"By the witness, Lee York, appellee introduced testimony which was highly prejudicial to appellant in that said testimony consisted of mere guesswork and speculation upon what might happen in the future relative to appellee's ability to earn money as an automotive mechanic, said estimates being based on speculation as to what progress appellee would make if he continued his schooling and if, after finishing the regular course, Automotive Mechanics II, he would work in the practical field as a precision automotive mechanic for a period of five years."

The Allison case cited we think does not support appellant's contention. The question there was whether the court erred in admitting the following testimony [86 Ga. 145, 12 S.E. 354]:

"Question. How soon after his injury (referring to Mr. Allison) were there any vacancies at which promotions could have taken place? Answer. Vacancies were shortly afterwards; say certainly, in the course of the next three to six months, I think, after Allison was hurt. According to Mr. Allison's standing, and the classification which I gave, his prospects for promotion to one of these places was good."

In holding that the trial court erred in admitting this testimony, the Georgia court said: "While it is proper in cases of this kind to prove the age, habits, health, occupation, expectation of life, ability to labor, and probable increase or diminution of that ability with lapse of time, the rate of wages, etc., and then leave it to the jury to assess the damages, we think it improper to allow proof of a particular possibility, or even probability, of an increase of wages by appointment to a higher public office, especially where, as in this

case, the appointment is somewhat controlled by political reasons. * * * To allow the jury to assess damages in behalf of the plaintiff, on the basis of a large income arising from a public office, which he has never received, and which is merely in expectancy, and might never be received, or, if received at all, might come to him at some remote and uncertain period, would be wrong, and unjust to the defendant. * * *"

The Supreme Court of the United States approved this doctrine in Richmond & D. R. Co. v. Elliott, 149 U.S. 266, 13 S.Ct. 837, 838, 37 L.Ed. 728, and quoted its doctrine approvingly. The Supreme Court stated: "Promotion was purely a matter of speculation, depending not simply upon the occurrence of a vacancy, but upon the judgment, or even whim, of those in control. Of course, there are possibilities and probabilities before every person, particularly a young man, and a jury, in estimating the damages sustained, will doubtless always give weight to those general probabilities, as well as to those springing from any peculiar capacities or faculties. But that is a different matter from proving to the jury the wages which some superior officers receives, and then exaggerating in the minds of the jury the amount of the damage which has been sustained, by evidence tending to show that there is a chance of plaintiff being promoted at some time to such higher

office. It is enough to prove what the plaintiff has been in fact deprived of; to show his physical health and strength before the injury, his condition since, the business he was doing, the wages he was receiving, and perhaps the increase which he would receive by any fixed rule of promotion. Beyond that it is not right to go, and introduce testimony which simply opens the door to a speculation of possibilities."

The Marshall case is similar. In that case the Vermont court stated [82 Vt. 489, 74 A. 112]: "As back tender the plaintiff received $2.50 per day for his work, the usual compensation paid for such services. For the purpose of enhancing the damages he was permitted to testify, against objection, that at the time of his injury, with his experience, he was capable of running the machine, a position then and since worth $3.50 a day. The case does not show that any vacancy existed in the higher position, nor that one was likely to exist within any reasonable time in the future, nor that there was any rule under which the defendant promoted its employes according to rank, even though competent to fill the higher position. Whether in any event evidence of prospective promotion, with increase of pay attending it, is admissible we do not decide. Certainly testimony by the injured servant that, by his experience in holding positions of lower grades in a particular line

of work, he is capable of doing the work of a higher position than he ever held, carrying more pay than he was receiving at the time of his injury, standing alone, is too problematical and uncertain to have any probative force on the question of damages in cases of this character, and its admission was error."

In the Weinstein case the Oregon court said: "We think the trial court properly rejected the offer of plaintiff to introduce, relative to the issue of damages, letters written and received by him, prior to the accident, as to his intention to study for the concert stage. Plaintiff was permitted to show at great length his ability as a musician and the effect that the accident had upon his career, but it would be entirely too uncertain and speculative to allow plaintiff to tell what he proposed to do in the future. As stated by Mr. Justice McBride in Brown v. Oregon-Washington R. & Nav. Co., 63 Or. 396, 128 P. 38: 'A fair rule would seem in cases of this character to be that any evidence which would indicate fairly the capacity of the plaintiff to earn money in his usual vocation, and the probability of his being able to do so in the future should be admitted; but, where such evidence consists of more guesswork and speculation upon what might happen in the future, it should be excluded. Such testimony in any court is seldom, or never, conclusive, and merely furnishes one factor in solving the equa-tion of a man's earning capacity.'" [127 Or. 411, 271 P. 734.]

In three of these cases it was held error to admit testimony of wages received by another than the injured person, where there was a possibility he might succeed to the higher position. The other was on the question of the admission of declarations of the injured person made in letters prior to his injury, as to his intention to study for the concert stage. These cases are helpful, but the questions are not similar.

No general rule can be formulated that would properly control the admission of evidence to prove a man's future earning capacity. It must be arrived at largely from probabilities; and any evidence that would fairly indicate his present earning capacity, and the probability of its increase or decrease in the future ought to be admitted. This would include evidence of age, intelligence, habits, health, occupation, life expectancy, ability, the probable increase in skill, rates of wages paid generally to those following his vocation, particularly so, where as in this case, the injured person has fitted himself for, but has not entered into, the work or business of his chosen vocation. De Haas v. Pennsylvania R. Co., supra; Virginian Ry. Co. v. Armentrout, supra; Chase v. Fitzgerald, supra; Richmond & D. R. Co. v. Elliott, supra.

It may be that such testimony is speculative, as asserted by defendant; but no more so than any that has for its purpose the proof of future action or events. It is all problematical at best. It is not questioned that mortality tables are admissible, but possibly not one time in fifty would the life expectancy of any individual come within a year of the actual length of his life. It is, to say the least, problematical whether he would continue to live, continue in health, continue to work, continue to work with much the same effort and ability he has shown in the past, continue to have the desire and the opportunity to work. Also, that the amount of wages paid him and those following his occupation generally in the past, will continue to be paid; that the wage scale will not be materially affected by depression, strikes, inflation, or war; that interest rates will remain much as they are. However "speculative" such testimony may be, it is the best that can be produced to establish earning capacity over a period of years. A jury of twelve average citizens ordinarily can be depended on to assess damages fairly, after they have heard and considered such evidence.

The trial court did not err in admitting in evidence the testimony tending to prove plaintiff's earning capacity.

The annuity tables were admissible in evidence to show present values of wages that might have been earned over a period of time, equal to plaintiff's life expectancy. This court has so held. Johnson v. Santa Fe, 35 N.M. 77, 290 P. 793; Mares v. New Mexico Public Service Co., 42 N.M. 473, 82 P.2d 257; Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A.1917F, 367; Chase v. Fitzgerald, supra.

As was said in the Kelly case, "It will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future." [241 U.S. 485, 36 S.Ct. 631.]

The trial court did not err in refusing to permit the jury to consider the alleged settlement wherein the defendant paid plaintiff's brother $100 ostensibly in full settlement of the damages. We will not review the testimony here: but there is no evidence that shows any authority on the part of plaintiff's brother to make such settlement, or to prove that the plaintiff ratified it.

It is said that the statement made by the court to the jury in withdrawing the question of settlement of damages from its consideration, was calculated to inflame the minds of the jury and result in a miscarriage of justice. No objection was made by counsel to these remarks of the

court, and the question cannot be considered here.

We are, however, of the opinion that the trial court should not have gone further than to withdraw the issue from the jury, which might have been done with a few words, without his unnecessary comments, such as "The evidence discloses that he executed it shortly after the accident the same night, while Ben was in the hospital with his arm torn off." Such statements were not necessary to effect the intended purpose of withdrawing the issue from the jury. Goldman v. State, 128 Neb. 684, 260 N.W. 373; 53 A.J., Trial, Sec. 79. But as these facts are all admitted without question, we doubt if any injury resulted to defendant. See Annos. 10 A.L.R. 1116, and citations of later cases in A.L.R. Blue Book.

It is asserted that the trial court erred in refusing to give to the jury the following requested instruction: "If you find from the evidence that just prior to the collision between plaintiff's truck and defendant's truck, plaintiff saw the approaching truck at a distance of approximately 30 feet or more coming in his direction, and that there was room for plaintiff to avoid the collision by the exercise of ordinary care and prudence by turning to the right, and that after seeing the approaching truck, plaintiff continued to drive his automobile with his left elbow and arm on the window of his truck, the elbow protruding therefrom, the court instructs you that as a matter of law the injury to his arm was due to his own negligence, and you will find for the defendant, as to such injury."

This requested instruction assumes that the driving of the pickup by plaintiff with his arm resting on the door, under the circumstances described, was negligence as a matter of law; although there was only about one-third of a second within which to change his position. Confronted with such an emergency as stated in the request, the plaintiff was not guilty of contributory negligence as a matter of law, in that he did not remove his arm from the door. The question of whether it was contributory negligence under the facts stated was one for the jury to decide.

While the verdict is large, it is supported by substantial evidence. We cannot say as a matter of law that it is excessive.

The judgment of the district court should be affirmed, and it is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.